LAWRENCE A. BIANCHI, executor, & another *vs.* RETIRE-
MENT BOARD OF SOMERVILLE & others.

Middlesex. December 8, 1970. — June 14, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, REARDON, & QUIRICO, JJ.

*Retirement. Pension. Veteran. Waiver.*

G. L. c. 32, § 4 (2) (b), authorizing a retirement board to determine how
    many years of part-time service are equivalent to one year of creditable
    service under the contributory retirement system, does not apply to
    retirement of a veteran under § 58. [647–648]
In computing the "total period of thirty years in the aggregate" which
    a veteran retiring from the active service of a city must have served in
    order to be entitled to retire under G. L. c. 32, § 58, each calendar year
    of part-time employment must be considered as one year of the required
    minimum of thirty years. [649]
The words "with the approval of the retiring authority" in G. L. c. 32,
    § 58, give the authority a mere ministerial function and not discretion-
    ary power to refuse approval of a veteran's retirement under § 58 where
    all the other statutory requirements for such retirement are met. [649]
In a proceeding in equity for declaratory and other relief against the re-
    tirement board of a city and the city treasurer, where it appeared that
    when a veteran about to reach the maximum superannuation age and
    to retire from the active service of the city after almost thirty-seven
    years of part-time service requested retirement under G. L. c. 32, § 58,
    the board wrongfully denied his request on the ground that his part-
    time service did not meet the thirty year service required by § 58, that
    the board simultaneously invited him to join the contributory system
    by making a lump sum "make up" payment, that the veteran had an
    appeal pending from the board's denial before the contributory retire-
    ment appeal board when he applied for membership in such system and
    made the "make up" payment in a written communication expressly
    reserving "any rights," that the city retirement board accepted the ap-
    plication and payment with knowledge of that reservation, that the ap-
    peal board ruled that it had no jurisdiction of the veteran's appeal to it,
    that shortly thereafter the veteran stopped working and received pay-
    ments under the contributory system pursuant to an option elected by
    him in his application, until his death, and that thereafter his widow re-
    ceived payments thereunder, it was held, especially in view of § 25 (3) (a),

that there was no waiver by either the veteran or his widow of any rights under § 58 or § 58B and that a decree should be entered placing the veteran's estate and his widow in the same position which they would have enjoyed if the city retirement board had not wrongfully refused the veteran's original request to retire under § 58. [649–650]

PETITION IN EQUITY filed in the Probate Court for the county of Middlesex on February 2, 1968.

The case was heard by *Sullivan,* J.

*Robert J. Muldoon, Jr.,* for the petitioners.

*Paul F. Hennessey,* Assistant City Solicitor, for the respondents.

QUIRICO, J. This is a petition for declaratory and other relief brought by Lawrence A. Bianchi, executor under the will of Dr. Anthony F. Bianchi (executor), and Mary C. Bianchi, the widow of Dr. Bianchi (widow), against the retirement board of Somerville (board) and the auditor and treasurer of that city. The petitioners seek a declaration that Dr. Bianchi was entitled to retire as a veteran under G. L. c. 32, § 58, and that his widow is entitled to the benefits provided by G. L. c. 32, § 58B.[1] The executor seeks repayment of a sum of money which Dr. Bianchi paid to the board for membership in the contributory retirement system. The case is before us on the appeal of the petitioners from the final decree of the Probate Court.

The parties filed a stipulation of certain, but not all, of the facts in issue. As to the remaining facts in issue the judge heard oral testimony and received exhibits, all of which are reported under G. L. c. 215, § 18. At the conclusion of the hearing the judge filed a report of his findings

---

[1] The pertinent provisions of these sections as of the date of Dr. Bianchi's retirement are as follows. Section 58, as amended through St. 1965, c. 498, § 3: "A veteran who has been in the service of . . . any . . . city . . . for a total period of thirty years in the aggregate, shall, at his own request, with the approval of the retiring authority, be retired from active service at sixty-five per cent of the highest annual rate of compensation . . . payable to him while he was holding the grade held by him at his retirement." Section 58B, as amended through St. 1958, c. 669, § 2: "A veteran who is entitled to be retired under the provisions of section fifty-eight may, on or before the date of his written application for retirement, elect to receive a lesser yearly amount of pension payable to such veteran during his lifetime, with the provision that upon his death leaving as a survivor his spouse at the time of his retirement two thirds of the yearly amount of such lesser pension shall be continued during the lifetime of and paid to such spouse."

of facts and rulings of law. He then entered a final decree declaring that the widow was only entitled to the contributory retirement benefits which she was then receiving under G. L. c. 32, § 12 (2), option (c), and not to the benefits payable under § 58B to a veteran's widow.

As to those issues of fact upon which the parties have not stipulated, it is our duty to examine the evidence thereon and decide such issues according to our judgment as to the facts and the law, giving due weight to the findings of the judge which will not be reversed unless plainly wrong. *LeBlanc* v. *Molloy*, 335 Mass. 636, 637. *Hanrihan* v. *Hanrihan*, 342 Mass. 559, 564. *Sulmonetti* v. *Hayes*, 347 Mass. 390, 391–392. We summarize the pertinent facts, including those stipulated, those found by the judge and not plainly wrong, and some additional facts found by us.

Dr. Bianchi was a veteran within the meaning of such word as defined in G. L. c. 32, § 1, and as used in § 58. Thereafter he was a practising dentist in the city of Somerville, and he was continuously employed by the city as a part-time supervisory school dentist from May 21, 1930, to March 31, 1967. He served on a temporary basis up to September 3, 1930, when he received certification by the Civil Service Department and a permanent appointment to the position. On January 26, 1966, he was notified by the board that he would reach the maximum superannuation age (of seventy years) on March 31, 1966, and that he could not be employed after that date. However, he was permitted by the Civil Service Department to continue to work in the position until March 31, 1967.

As early as August 25, 1965, the board considered the possibility that Dr. Bianchi might request retirement as a veteran under G. L. c. 32, § 58. On that date the board decided that if Dr. Bianchi made such a request, he would be allowed "a half year's service for each calendar year's service." The effect of that decision was (a) that the board would consider Dr. Bianchi's part-time service of almost thirty-seven years as the equivalent of eighteen and one-

half years of service, and (b) that Dr. Bianchi would not be eligible to retire under the provisions of § 58 which required a minimum of thirty years of service.

After Dr. Bianchi received the board's letter of January 26, 1966, he made an oral request to the board that he be permitted to retire under § 58. On February 4, 1966, the board wrote his counsel that it had determined that Dr. Bianchi was "entitled to one half year credit towards his retirement for each calendar year of service." On the same date it sent a separate letter to Dr. Bianchi informing him that if he wished to join the contributory retirement system he would be permitted to "pay a make up payment prior to March 30 and . . . [he] would be eligible to receive a retirement allowance." On February 14, 1966, the board sent still another letter to Dr. Bianchi informing him that a "make up payment" would be required of him to join the contributory retirement system and stating the amounts of the benefits he, and his widow as survivor, would receive under such an arrangement.

On March 8, 1966, the board sent Dr. Bianchi an application for membership in the contributory retirement system. It was enclosed with a letter informing him of the amount of the required "make up payment." On March 15, 1966, the board received the required payment [2] and the executed application from Dr. Bianchi's lawyer, together with the lawyer's letter stating that "these payments are made without prejudice to any rights of Dr. Bianchi." The quoted language indicates that by joining the contributory system Dr. Bianchi did not intend to waive his right to retirement under § 58. This was consistent with the action previously taken by him on February 16, 1966, in appealing to the contributory retirement appeal board (appeal board) from the Somerville board's refusal to retire him under § 58. On February 23, 1966, the Somerville board wrote to the appeal board questioning the latter's jurisdiction over "non

---

[2] Dr. Bianchi sent the board $9,030.96, and the balance of $10.52 was deducted from his next paycheck.

contributory cases." On September 23, 1966, the appeal board voted that it had no jurisdiction of the matter.

In his application for membership in the contributory retirement system, Dr. Bianchi elected "option (c)" under G. L. c. 32, § 12 (2). This provided for payments to him for life at less than the full amount otherwise payable to him, and in consideration of such reduced payments it also provided for survivor benefits payable to his widow.[3] Dr. Bianchi started to receive benefits at the annual rate of $1,760.40 ($146.70 a month) in April, 1967; and he received a total of $811.74 to the date of his death on September 16, 1967. The widow has been receiving benefits at the annual rate of $1,173.60 ($97.80 a month) since that date.

The principal legal question presented by the above facts is whether Dr. Bianchi was entitled to be retired as a veteran under G. L. c. 32, § 58, when he applied for such retirement shortly after January 26, 1966. We hold that he was. "In order to be eligible for retirement under G. L. c. 32, § 58, as amended, a person must meet three requirements: (1) he must be a veteran within the meaning of the statute (c. 32, § 1) . . .; (2) he must have been in° the service of the Commonwealth, or subdivision thereof, for a total period of thirty years in the aggregate; and (3) he must be in active service at the time of retirement. Each of these three requirements is a condition precedent to eligibility for retirement. If any one of them is not met, the claim fails." *Weiner* v. *Boston*, 342 Mass. 67, 71.

Dr. Bianchi met the first and third requirements of § 58. The basic question is whether he had been in the service of the city of Somerville "for a total period of thirty years in the aggregate." Like Dr. Bianchi in the present case, the plaintiff in the *Weiner* case was also a part-time employee, serving as a public health physician for the city of Boston

---

[3] The annual benefits payable to him and his widow under the contributory system and those which would be payable to them if he had been retired as a veteran under § 58 are as follows:

|                                                | Dr. Bianchi | Widow      |
|------------------------------------------------|-------------|------------|
| Annual payments under contributory system      | $1,760.40   | $1,173.60  |
| Annual payments under §§ 58 and 58B            | $2,469.10   | $1,646.06  |

for at least thirty years. While Dr. Weiner was denied a pension under § 58, it was because it was found and ruled that he was not a veteran; and the question whether thirty years of part-time service satisfied the statutory requirement for a minimum of thirty years of service was not put in issue.

On the record before us it is clear that the decisions of both the board and of the trial judge were based on the assumption that § 58 required a minimum of thirty years of full-time service and upon their finding that Dr. Bianchi's half-time service amounted to an aggregate of only eighteen and one-half years.[4]

In our view both the board and the trial judge misconstrued § 58, and improperly applied to the case statutes which are not applicable to the retirement of a veteran under § 58. General Laws c. 32 represents an attempt to collect in one chapter most of the statutes regulating a large number and variety of separate and distinct contributory and non-contributory retirement and pension systems for public employees. The provisions regulating the retirement of veterans are contained in §§ 56 through 60. Some of these sections in turn refer to other specified sections of c. 32. Generally speaking, sections of c. 32 other than §§ 56-60 apply to the retirement of veterans only if they are expressly made applicable thereto by such other sections or by §§ 56-60. The principal exceptions to this general statement are found in §§ 90A through 102 which contain provisions of general application to some or all retirement systems or persons retired thereunder.

The board and the trial judge assumed that § 4 (2) (b)

---

[4] The judge's decision included the following statements: "I find that this service had to be full-time creditable service which is based on work annually done. When all the annual work is added up the aggregate must total thirty years, and therefore when the deceased is credited with all the work annually performed by him it did not provide him with the thirty years credited services as required by Section 58, and I ruled that it was the intention of this Section that he be given credit for work annually done and not the calendar years the deceased worked nor the entire period that he held the position of a school dentist. I find that . . . [Mrs. Bianchi] is not entitled to benefits as a Veterans widow as the deceased was not entitled to the benefits under Section 58."

authorizing a board to determine how many years of part-time service are equivalent to one year of creditable service under the contributory retirement system applies to retirements under § 58. It does not. There is no language in §§ 56–60 or in § 4 (2) (b) making the latter statute applicable to veterans' pensions.

Section 58 does not expressly require that the thirty years of employment be full-time employment. It is silent on that subject. That silence is significant when § 58 is compared with many other sections of c. 32 where the Legislature saw fit to insert special language when it intended to make special provisions for part-time employees.[5]

The most compelling reason for holding that each year of part-time service by Dr. Bianchi counts as one year of service under § 58 is that the pension payable under that section when Dr. Bianchi retired on March 31, 1967, was "sixty-five per cent of the highest annual rate of compensation . . . payable to him while he was holding the grade held by him at his retirement."[6] His rate of compensation at that time was $5,050 annually for part time, and the board used that figure as the basis for computing the benefits payable annually to Dr. Bianchi and his widow under the contributory system and those which would have been payable to them upon Dr. Bianchi's retirement as a veteran under § 58. Since retirement benefits under § 58 are computed at a percentage of the employee's annual rate of compensation, it necessarily follows that the benefits for a part-time employee such as Dr. Bianchi will be at a correspondingly lower rate. To require two years of half-time work in order to qualify for credit for each of the statutory mini-

---

[5] See definition of "employee" in § 1, as amended. A State employee is defined in part as one "who is engaged in duties which require that his time be devoted to the service of . . . such governmental unit in each year during the ordinary working hours of regular and permanent employees." The provision about "ordinary working hours" is not included in the definition of municipal employees. For further express references to part-time employees, see §§ 3 (2) (d), 3 (2) (g), 4 (2) (b) and 5 (3) (c).

[6] The "sixty-five per cent" was changed to "seventy-two per cent" by St. 1968, c. 700, § 1, and by § 2 thereof the increase was made applicable to persons previously retired under § 58.

mum of thirty years of employment would require sixty years of such half-time work. This is impossible with a compulsory retirement age of seventy. It would deprive part-time employees of any possibility of retiring under § 58.

For all of the reasons discussed above, we hold that each calendar year of half-time employment by Dr. Bianchi must be considered as one year of the required minimum thirty years of employment under § 58. For similar interpretations of G. L. c. 32, §§ 56 and 57, see Rep. A. G., Pub. Doc. No. 12 (1949) 57, and Rep. A. G., Pub. Doc. No. 12 (1955) 80–83. See also Rep. A. G., Pub. Doc. No. 12 (1957) 68–69, limiting credit under § 58 for service as town moderator to the number of days actually worked in such capacity.

When Dr. Bianchi applied to the board shortly after January 26, 1966, for retirement as a veteran under § 58, he met all requirements for such retirement. Although § 58 says that such a veteran shall, at his own request, "with the approval of the retiring authority, be retired from active service" and receive benefits as prescribed therein, we held in *Hoban* v. *Boston Retirement Bd.* 355 Mass. 681, 684, that this language "was intended to confer purely a ministerial role on the retiring authority." The board thus had no discretion to deny Dr. Bianchi retirement under § 58. On February 2, 1966, the board wrongfully denied him such retirement. On February 4 it informed him of this and simultaneously invited him to join the contributory system by making a lump sum make up payment.

In its answer the board contended that by joining the contributory retirement system and accepting the benefits thereunder Dr. Bianchi waived whatever rights he had to retirement as a veteran under § 58. The judge stated in his decision that "by accepting the benefits under Section 12 [(2)], Option C [of G. L. c. 32, relating to the contributory retirement system], both the deceased and the petitioner [the widow] waived any rights [they] may have had." We hold that there was no waiver by either Dr. Bianchi or by his widow of any rights under § 58 or § 58B. When Dr. Bianchi joined the contributory system he had

an appeal pending before the appeal board from the Somerville board's denial of his request for retirement under § 58. That appeal was not disposed of until it was denied on September 23, 1966. The board's argument on this point is, in effect, that despite its own wrongful denial of Dr. Bianchi's request for retirement under § 58, he was compelled to make an irrevocable decision whether to join the contributory system by the deadline of March 31, 1966, or to risk all future benefits for himself and his widow by relying solely on his appeal then pending before the appeal board and litigation, if necessary, to establish his rights under § 58. The board cannot use its own wrongful conduct as the basis for its claim of waiver by Dr. Bianchi. Additionally, in filing his application for membership in the contributory system and making the required "make up" payment, Dr. Bianchi expressly and in writing conditioned his action on a reservation of his rights under § 58, and the board accepted the application and payment with knowledge of that condition.

We have had occasion in the past to permit a former member of the contributory system, who had accepted a refund of all of her contributions to the system, to repay them and become eligible for benefits. In doing so we noted "the great complexity of the relevant provisions of c. 32," and concluded that her earlier withdrawal of her contributions was the result of "an honest error which can readily and fairly be corrected." *Boston Retirement Bd.* v. *McCormick*, 345 Mass. 692, 695–698. The error in the present case was that of the board, and that error can readily and fairly be corrected now without prejudice to the board, Dr. Bianchi's estate or the widow.[7]

---

[7] General Laws c. 32, § 25 (3) (a), as amended, indicates a legislative policy against depriving a veteran of his rights under § 58 on the basis of waiver. It provides that such a veteran "shall have full and complete rights either under the system of which he is a member or under the provisions of sections fifty-six to sixty A inclusive, *whether or not he may have signed a waiver of his rights under such sections upon becoming a member of such system*, anything to the contrary in the provisions of this chapter or in similar provisions of earlier laws notwithstanding" (emphasis supplied). That permits the revocation of a prior written waiver of rights under § 58. It lends support to the setting aside of the implied waiver, if any, resulting from Dr. Bianchi's conduct in joining the contributory system and receiving some benefits thereunder, all of which occurred after the board's wrongful denial of his retirement under § 58.

We hold that Dr. Bianchi's estate and his widow should now be placed in the same position which they would have enjoyed if the board had granted to Dr. Bianchi his retirement under § 58 starting on April 1, 1967. In that situation, he would not have been required to pay the sum of $9,041.48 to the board to join the contributory system. If he had made contributions to such a system at any time, he would have been entitled to a repayment of all of such contributions upon retirement under § 58. G. L. c. 32, § 25 (3) (a), as amended through St. 1962, c. 682, § 1. The evidence permits an inference and therefore a finding that Dr. Bianchi would have exercised the same option available to him under § 58B which he exercised under the contributory system to take reduced payments for himself, with survivor benefits for his widow. Thus, the payments receivable by Dr. Bianchi from April 1, 1967, to his death on September 16, 1967, and by his widow after September 17, 1967, would have been at a higher annual rate under §§ 58 and 58B than the payments which they actually received on the basis of the contributory pension system.

The final decree is reversed, and a new decree is to be entered ordering and declaring substantially as follows, with the amounts of payments or repayments and interest required thereby to the date of the decree to be determined by the Probate Court and inserted in the decree:

(a) That the executor of the will of Dr. Bianchi repay to the treasurer of the city of Somerville the sum of $811.74 received by Dr. Bianchi in benefits prior to his death;

(b) That the widow, Mary C. Bianchi, repay to the treasurer of the city of Somerville a sum equal to the total benefits received by her from said city as survivor benefits from September 17, 1967, to the date such decree is entered;

(c) That the treasurer of the city of Somerville repay to the executor of the will of Dr. Bianchi the sum of $9,041.48 which was paid by Dr. Bianchi to the city on March 15, 1966.

(d) That the treasurer of the city of Somerville pay to the executor of the will of Dr. Bianchi a sum computed at the rate of the payments which were due and payable to

him under G. L. c. 32, § 58B, for the period from April 1, 1967, to September 16, 1967, inclusive;

(e) That the treasurer of the city of Somerville pay to the widow, Mary C. Bianchi, a sum computed at the rate of the payments which were due and payable to her under G. L. c. 32, § 58B, for the period from September 17, 1967, to the date of the decree; and that monthly payments be made to her thereafter during her lifetime, computed at the rate or rates required by said § 58B or amendments thereto; and

(f) That all payments or repayments ordered by this decree shall include interest computed thereon from the date originally payable to the date of the decree.

*So ordered.*